**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| Zinovy Gumnitsky, et al., | ) | **CASE NO. 1:04 CV 1855** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| Delta International Machinery Corp., | ) | <u>**Memorandum of Opinion and Order**</u> |
| et al., | ) | |
| Defendants. | ) | |


<u>Introduction</u>

This matter is before the Court upon defendant Delta International Machinery Corporation's Motion for Summary (Doc. 15). This is a products liability case involving a hand injury incurred during use of a miter saw. For the following reasons, the motion is GRANTED.

<u>Facts</u>

Plaintiffs, Zinovy Gumnitsky (hereafter, Gumnitsky) and Anna Gumnitsky (collectively hereafter, plaintiffs), filed this products liability and negligence action against defendants, Delta International Machinery Corporation and John Doe and/or John Doe Inc. The latter has not been identified. The case was filed in the Cuyahoga County Common Pleas Court and removed to

1

this Court on the basis of diversity of citizenship.

Gumnitsky spent seven years as a carpenter in his native country, Ukraine.  He was licensed and certified there, and received most of his training from his father, a master carpenter. Gumnitsky then went to welding school in Ukraine, receiving his license and certification in that field.  He worked as a welder for four years before leaving Ukraine and becoming a United States citizen.  After his arrival in the United States in 1989, Gumnitsky secured employment with Kiffer Industries in Cleveland as a welder.  Gumnitsky first learned how to use a DeWalt brand electric miter saw at Kiffer Industries, and operated it almost daily.  Gumnitsky did not use a miter saw in Ukraine. (Gumnitsky depo.7-18, 24-26)

Gumnitsky sought to supplement his income when work slowed down at Kiffer Industries by purchasing houses and remodeling them.  One such home was located in Parma, Ohio.  Gumnitsky had a home workshop in his garage.  In 2000, Gumnitsky purchased the Delta Sidekick 12" Compound Miter Saw, Model 36-235 (hereafter, the Delta saw) which is the subject of this action, at a Home Depot. He chose this saw based on price, although he considered other brands.  While he had sought to purchase the DeWalt brand which he had used at  Kiffer Industries, it was too expensive.  (*Id.* 27-35)

The Delta saw plaintiff has identified as the one he was using when he was injured was manufactured in May 2000.  (Louis Brickner aff.).  The Delta saw has two sets of identical warnings posted on the right and left front of its table, facing the operator, which state in relevant part:

> FOR YOUR OWN SAFETY READ INSTRUCTION MANUAL BEFORE OPERATING MITER SAW.
>
> 1. Always wear eye protection.

2

    2. Keep hands out of path of saw blade.

    3. Do not operate saw without guards in place.

    4. Do not perform any operation free-hand.

    5. Never reach around saw blade.

    6. Turn off tool and wait for saw blade to stop before moving workpiece or changing settings.

    7. Disconnect power by unplugging tool before changing blade or servicing.

(Brickner aff. and Exs. B-1 and B-2). Gumnitsky read and understood the warnings on the saw.

(Gumnitsky depo. 46).

    The Delta saw's Instruction Manual (hereafter, the manual) contains Safety Rules and

Additional Safety Rules for Compound Miter Saws. The Safety Rules state in part:

> Woodworking can be dangerous if safe and proper operating procedures are not followed. As with all machinery, there are certain hazards involved with the operation of the product. Using the machine with respect and caution will considerably lessen the possibility of personal injury. However, if normal safety precautions are overlooked or ignored, personal injury to the operator may result. Safety equipment such as guards, push sticks, hold-downs, featherboards, goggles, dust masks and hearing protection can reduce your potential for injury. But even the best guard won't make up for poor judgment, carelessness[,] or inattention. Always use common sense and exercise caution in the workshop. If a procedure feels dangerous, don't try it. Figure out an alternative procedure that feels safer. REMEMBER: Your personal safety is your responsibility.
>
> ***
>
> **WARNING: FAILURE TO FOLLOW THESE RULES MAY RESULT IN SERIOUS PERSONAL INJURY**
>
> 1. **FOR YOUR OWN SAFETY, READ INSTRUCTION MANUAL BEFORE OPERATING THE TOOL.** Learn the tool's application and limitations as well as the specific hazards peculiar to it.
>
> ***
>
> 12. **WEAR PROPER APPAREL.** No loose clothing, gloves, neckties, rings, bracelets,

3

or other jewelry to get caught in moving parts.  Nonslip footwear is recommended.  Wear protective hair covering to contain long hair.

\*\*\*

14.  **SECURE WORK.**  Use clamps or a vise to hold work when practical.  It's safer than using your hand and frees both hands to operate tool.

\*\*\*

(Doc. 15 Ex. C).  The Additional Safety Rules for Compound Miter Saws state in part:

\*\*\*

4.  **ALWAYS** hold work firmly against the fence and table.  **DO NOT** perform any operation freehand.

5.  **WARNING: ALWAYS** keep hands out of path of saw blade.  If the workpiece you are cutting would cause your hands to be inside the table hazard area (see section "**TABLE HAZARD AREA**"), the workpiece should be clamped in place before making cut.

\*\*\*

(*Id.*).  The Manual defines the TABLE HAZARD AREA:

**TABLE HAZARD AREA**
**WARNING: THE AREA INSIDE THE TWO RED LINES (A) FIG. 23, ON THE TABLE IS DESIGNATED AS A HAZARD ZONE.  NEVER PLACE YOUR HANDS INSIDE THIS AREA WHILE THE TOOL IS BEING OPERATED.**

(*Id.* at 15).  The accompanying Figure 23 demonstrates that two lines set off the area.  (*Id.*). [1]

The Delta saw has a vertical fence, which extends vertically on either side of the saw's

blade at a right angle to the Delta Saw's table.  (Brickner aff. and Exs B-1, B-3; Doc. 15 Ex. C;

videotaped deposition of Gumnitsky).  The back side of the right fence has a slanted/sloped

---

[1]  A picture of the saw accompanying plaintiffs' brief clearly shows the two red lines marking the TABLE HAZARD AREA.  (Doc. 20 at 4).

4

design.  (Lonnie Bird depo. 28-29).

The parts provided with the Delta saw include a clamp which can be used for holding work in place horizontally on the Delta saw's table while being cut.  A clamp is not provided for holding a workpiece in a vertical (upright) position against the fence. (Doc. 15 Ex. C; Brickner aff.)

On April 18, 2003, Gumnitsky was using his Delta saw to cut floor molding for the remodeling of the Parma home he owned.  While he had cut moldings many times in both Ukraine and the United States, this was his first time cutting oak molding.  Plaintiff was operating the saw in the driveway of the home.  The saw was set up on a plywood table upon two sawhorses.  Gumnitsky was wearing leather gloves while operating the saw.  When the accident happened, Gumnitsky was attempting to cut a one inch section off of the oak baseboard molding approximately 12-18 inches in length by making an inside cut at a 45 degree angle.  (Gumnitsky depo. 32, 39-45, 50-56, 73-74).

In making the cut which caused his injury, Gumnitsky positioned the piece of oak molding in an upright (vertical as opposed to horizontal) position against the right side fence.  Gumnitsky held the piece of oak trim against the fence with his right hand, and brought the saw blade down with his left hand.  In making the cut, Gumnitsky's right hand was placed within the TABLE HAZARD AREA.  He did not use a clamp.  The blade made contact with Gumnitsky's gloved right hand, amputating multiple fingers. Gumnitsky does not remember exactly what happened when the injury occurred.  When asked whether he brought the saw right down on his hand, Gumnitsky responded, "I don't think so I bring the saw on my hand.  I think it's the blade pull the wood in and my hand." (Gumnitsky  depo. 54, 56-59, 71-72, 75-76; video of deposition;

5

photograph from deposition Doc. 15 at 6; Karl Daukss depo. 31-32 and video of deposition).

Plaintiffs thereafter filed this Complaint which sets forth five claims.  Count One alleges products liability based on defendant's manufacture of the Delta saw pursuant to the Ohio statute.  Count Two alleges defendant's negligence.  Counts Three and Four are asserted against the unidentified John Does.  Count Five alleges loss of consortium on behalf of Anna Gumnitsky.

This matter is now before the Court upon defendant Delta International Machinery Corp.'s Motion for Summary Judgment.

### **Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as

6

> provided in this rule, an adverse party may not rest upon the mere
> allegations or denials of [his] pleadings, but [his response], by
> affidavits or as otherwise provided in this rule, must set forth
> specific facts showing that there is genuine issue for trial.  If he
> does not respond, summary judgment, if appropriate, shall be
> entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

### Discussion

### 1.  Count One

Count One alleges products liability based on defendant's manufacture of the Delta saw including that the saw was defective in design (Ohio Revised Code § 2307.75), defective for failure to provide an adequate warning (Ohio Revised Code § 2307.76) and defective for failure

7

to conform to an express representation by defendant with respect to the saw's character, quality, or safety (Ohio Revised Code § 2307.77).

Under Ohio law, a manufacturer is subject to liability where the plaintiff proves by a preponderance of the evidence that the product was, *inter alia,* defective in design, defective due to inadequate warning, or defective for failure to conform to a representation made by the manufacturer and that the defect was a proximate cause of the harm for which plaintiff seeks damages. *See* O.R.C. § 2307.73 and *Clay v. Ford Motor Co.,* 215 F.3d 663 (6th Cir. 2000).

**(a) defective design**

"Ohio law authorizes recovery for injuries incurred as a result of a defectively designed product." *Miller v. Uniroyal Technology Corp*., 35 Fed.Appx. 216, 222 (6th Cir. 2002) (citing O.R.C. § 2307.75(A) ). To establish a design defect claim, a plaintiff must prove by a preponderance of the evidence that (1) the product manufactured and sold by the defendant had a design defect, (2) this defect existed at the time the product left the control of the manufacturer, and (3) the defect was the proximate cause of the injury for which recovery is sought. *Id.* (citing *State Farm Fire & Casualty Co. v. Chrysler Corp*., 37 Ohio St.3d 1 (1988) ). This means the defect must be adequately identified. Where a plaintiff has no expert analysis or other evidence demonstrating that some aspect of the design was defective, the claim is dismissed." *McGrath v. General Motors Corp*., 26 Fed.Appx. 506, 511 (6th Cir. 2002) (citing *State Farm Fire & Casualty Co.* )

"A product is defective in design if (1) the foreseeable risks of the design exceed the benefits, or (2) the product is more dangerous than an ordinary consumer would expect when used in a reasonably foreseeable way." *Clay,* 215 F.3d at 669 (citing O.R.C. § 2307.75(A)

8

(Anderson 1995) ).[2]

> Pursuant to the risk-benefit test,
>
> the foreseeable risks of a design are determined by considering the following non-comprehensive list of factors: the nature and magnitude of the risks in light of the intended and reasonably foreseeable uses of the product; the likely awareness of the product's users of those risks; the likelihood that the design would cause harm in light of its intended and reasonably foreseeable uses; and the extent to which the product conformed to any applicable product standards that were in effect when it left its manufacturer.

*Id.* at  669.  These risks, however, must be weighed against the following benefits associated with the products design: the utility of the product, including any performance or safety advantages associated with that design or formulation; the technical and economic feasibility, when the product left the control of its manufacturer, of using an alternative design or formulation; the nature and magnitude of any foreseeable risks associated with such an alternative design or formulation.  *Id.* at 670 (citing O.R.C. § 2307.75(C) ).

Under the consumer-expectation test, a product is defective in design if "[i]t is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner."  O.R.C. § 2307.75(A)(2).  Pursuant to this test

> a product may be proven to be in a defective condition if (1) it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, (2) the claimed defect was present when the product left the manufacturer, and (3) the claimed defect proximately caused the claimed injuries. *Hisrich v. Volvo Cars of North America*, 226 F.3d 445, 455 (6th Cir. 2000). 'Evidence of unsafe, unexpected product performance is sufficient to infer the existence of a product defect under the first prong of the consumer-expectation standard.' *Id.* (quoting *State Farm Fire & Cas. v.*

---

[2]     A 1996 amendment to the Ohio product liability code eliminated the consumer expectation test for product defect.  However, the 1996 amendments were subsequently held unconstitutional.  The Ohio product liability code has again been recently amended but these changes do not apply herein since the accident occurred in April 2003.

> *Chrysler Corp.*, 37 Ohio St.3d 1 (Ohio 1988)). 'The determination of whether a product
> is more dangerous than an ordinary person would expect is generally a question of fact
> which does not require expert testimony.' *Id.* (quoting *Fisher v. Ford Motor Co.*, 13
> F.Supp.2d 631, 638 n. 10 (N.D.Ohio 1998)).

*Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 901-902 (6th Cir. 2004).

Although plaintiffs assert that the Delta saw is defective in design under either test,
plaintiffs fail to provide any analysis of the factors, set forth above, to be considered in applying
the risk-benefit test.  In particular, no argument is presented, nor do plaintiffs' experts show that
the foreseeable risks associated with the Delta saw outweigh its benefits.  Therefore, the Court
assumes that plaintiffs are relying on the consumer expectation test.

Plaintiffs assert, "... Gumnitsky had a reasonable expectation that the [Delta saw] could
be safely operated without a clamp given [that] the design of the saw discouraged use of a
clamp."  (Doc. 20 at 14).

Initially, defendant asserts that application of the consumer expectation test fails because
plaintiff was not using the Delta saw in an intended or reasonably foreseeable manner given that
he disregarded defendant's warning to keep his hands out of the TABLE HAZARD AREA and
he wore gloves.

Relying on the testimony of two of defendant's experts, plaintiffs assert that Gumnitsky
was employing an intended use of the Delta saw.  Plaintiffs contend that while it is not disputed
that there are various ways to make the cut Gumnitsky was attempting to make, the testimony
shows that defendant's experts believed "there was nothing wrong with the method [Gumnitsky]
was employing."  (Doc 20 at 9).  Plaintiffs point to the testimony of Michael Gililland:

10

Q.  You can understand that he would be doing, making his in placement cut [3] because he was using, he was doing baseboard molding?

A. Yes.

Q.  You don't find fault with the fact that he was doing it that way or cutting it that way?

Objection asserted.

A. I don't find any fault in making a cut with the workpiece vertical against the fence and I don't find any fault with using the right side fence.

(Gililland depo. 21).  However, Gililland further testified:

Q.  And tell us what faults you find in this particular situation.

A.  He wore gloves and he placed his hand in the path of the blade.

(*Id.*). Additionally, plaintiffs point to Louis C. Brickner, Jr.'s testimony wherein he described the cut made by Gumnitsky:

A. ***

When [Gumnitsky] demonstrated it, what he did was he turned the saw to a 45 degree miter this direction, okay, and he was holding, holding the material against the fence like this with his right hand and he was operating the saw.  He was indicating that he operated the saw with his left - - he moved the head down with his left hand which, nothing wrong with that.  The handle is ambidextrous, so it's not the most common way to operate the handle.  Most people operate the saw with their right hand and hold the material with their left hand, but that is my understanding of what Mr. Gumnitsky said he was doing.

***

(Brickner depo. 21).  However, Brickner further testified that he believed the accident happened because Gumnitsky's "hand was close to the blade" and he was wearing gloves.  (*Id.* 29).

Additionally, Brickner avers that an operator can hold a workpiece against the fence in an

---

[3]     "In placement cut" refers to the cut made by Gumnitsky which resulted in his injury.  It is intended to describe Gumnitsky's placement of the workpiece in a vertical (upright) position against the right side fence.  (Gililland depo. 20).

11

upright position with his hand *unless* the hand is in the TABLE HAZARD AREA.  (Brickner aff. ¶ 6).

Thus, defendant's experts do agree that Gumnitsky was employing an acceptable method to make his cut *unless* his hand was too close to the blade, i.e., within the TABLE HAZARD AREA.  Accordingly, plaintiffs fail to demonstrate, by relying on the testimony of defendant's experts, that Gumnitsky was using the saw in an intended or reasonably foreseeable manner.  At a minimum, there is a question of fact as to this issue.

As stated above, and as cited by plaintiffs, evidence of unsafe, unexpected product performance is sufficient to infer the existence of a product defect under the consumer expectation test.  For example, in *Hickey v. Otis Elevator Company,* 2005 WL 1983961 (Ohio App. 10th Dist. 2005), the court could infer the existence of a product defect because plaintiff "received a severe electric shock by simply pushing the elevator call button."  *Id.* at * 2. [4] Plaintiffs contend that defendant has failed to design a safe product for all foreseeable uses. Plaintiffs assert that two related defects existed in the design of the Delta saw: 1) A clamp was not provided to hold a workpiece upright against the right or left fence.  2) The slanted/sloped back of the right side fence discouraged employment of a user's own clamp.  For the following reasons, an issue of fact exists as to whether the Delta saw was defective in design.

The parts provided with the Delta saw include a clamp which can be used for holding work in place horizontally on the Delta saw's table while being cut.  A clamp is not provided for

---

[4]     Plaintiff, however, could not demonstrate proximate cause given the length of time which had lapsed since the elevator had been installed and the uncontroverted evidence of the lack of damage to or problems with the call buttons.

holding a workpiece in a vertical (upright) position against the fence. James Madden, P.E., one

of plaintiffs' experts, testified that such a clamp could have been provided.  (Madden depo. 18).

       Both of plaintiffs' experts opine that the design of the back of the right side fence is not

conducive to clamping.  Karl Daukss, P.E.[5] testified that "because of the way the right side fence

is shaped on the back, being a sloped surface, that you can't apply proper clamp on there to hold

the workpiece against that fence" in a horizontal manner. (Daukss depo. 41-42).  Madden,

testified

> A better way to say it is its absence of a clamp suitable for - - and I noticed you all use
> the term differently; but if I have this piece of wood - - suitable for cutting the wood in a
> vertical plane, okay?  And when that's absent, secondarily then is the problem that the
> fence is so designed that you can't reasonably use your own clamping device.

(Madden depo. 7).  And, further,

> Q.  Is your argument with [the Delta saw] that it doesn't have the proper type of clamp or
> that it doesn't have a right side fence that's designed vertically?
>
> A.  At a minimum to use this safely, it has to have, the fences have to be designed so you
> can use clamps and these fences are not designed to use clamps.  One can say you can
> somehow or other jury rig it on but the bottom line is it's not a proper use of clamps and
> therefore discourages people from using them.
>
> ***

(*Id.* 17). [6]

_____

[5]    Defendant notes that neither of plaintiffs' experts has been involved in the design
or manufacture of a saw (of any type), and neither has served on any standards
committee having to do with woodworking or saws.  (Daukss depo. 7-8; Madden
depo.)  Defendant, however, does not seek to exclude the experts' testimony.

[6]    Plaintiffs assert that this testimony is reinforced by the testimony of Michael
Gilliland, one of defendant's experts:

Q.  Do you have any idea, of course you haven't talked to anybody at Delta, why
they designed it this way; why the right side of the fence in this particular saw is

Defendants' experts, on the other hand, testified that several commercially available clamps could be used to hold a workpiece against the fence in a vertical position.  (Brickner aff.; Gililland depo. 25-26; Bird depo. 18-20, 25-26).

Defendant points out that Daukss and Madden testified that their opinions are not based on any governmental or regulatory standard, or any violation thereof.  (Daukss 7-9, 35; Madden 6-8, 26). Defendant's expert, Michael Gililland, who has sat on trade committees that set and interpreted standards for woodworking machinery, testified that applicable standards do not require clamps and the industry practice is to supply only one clamp or no clamp at all. (Gililland depo. 6-8, 29-31).  However, while defendant asserts that Gililland also testified that the clamping system and fence are in conformity with all applicable design and manufacturing

---

not parallel on both sides?

A.  I can only speculate for you.

Mr. Strang [attorney for defendant]: I'm sorry.  Object to that.  Go ahead.

Q.  Well, what do you think?

A.  Looking at it as an engineer, I would say it was probably their intention to discourage the use of the right side for clamping.  The saw is preferably used with the workpiece clamped to the left side fence.

Q.  There's nothing in the manual about that, though, is there?

A.  No.

(Gililland depo. 33-34).

Defendant objects to this testimony which it states is "clearly speculative" as to the reason for the fence design.  Defendant points out that Gililland testified that he did not design the fence and, therefore, does not know "what was in the mind of the designer."  (Gililland depo. 27).

14

standards/regulations, the portion of the testimony to which defendant refers does not reveal such a statement.  (*Id.*)

Defendant asserts that the miter cut Gumnitsky was attempting to make could have been performed safely on the Delta saw in several other ways:  1) by using the clamp provided by Delta while holding the workpiece flat on the table, as demonstrated in the manual, 2) by securing the workpiece against the fence by hand placed outside the TABLE HAZARD AREA and 3) by securing the workpiece against the fence with a commercially available clamp.  In particular, Louis C. Brickner, Jr., who participated in the design and development of the Delta saw, avers,

> 6) The Delta Saw has a vertical fence, which extends vertically on either side for the saw's blade at a right angle to the Delta Saw's table.  It can be used for cutting wood, including molding, in a vertical position (upright) against the fence.  The work piece can be held against the fence (right or left fence) by the operator's hand unless doing so would cause the hand to be inside "TABLE HAZARD AREA".  If the operator feels that the work piece cannot be adequately secured with the [sic] his/her hand outside the "TABLE HAZARD AREA", the operator is to use a clamp to secure it.  A number of commonly available clamps can be used for that purpose and two of such clamps are shown in Photographs D-1 and D-2, which are so marked in Delta's Motion for Summary Judgment.  D-1 shows a "quick release" clamp clamping the work piece to the right fence of the Delta Saw.  D-2 shows the use of a "bar" clamp for that purpose.
>
> 7) The cut plaintiff was attempting when injured could also be performed with the work piece face down on the Delta Saw's table.  The manual shows how the operator can perform this cut (shown from the right side but can be done from the left as well).  The Delta supplied clamp can be used to secure the work piece for such a cut.  Some manufacturers provide no clamps with their miter saws, and some manufacturers provide them only as accessories.
>
> 8) Plaintiff could have performed the compound miter cut of the molding (cut he was attempting at the time of the accident) by holding the work piece against the fence with his hand outside the "TABLE HAZARD AREA", as the board extended beyond the limit of that zone (see B-3 showing that a 12" board would extend beyond the limit).  He could have also used a clamp to secure the work piece against the fence as shown in D-1 and D-2.  He could have used the Delta Saw's table and cut the work piece flat, using the Delta supplied clamp to secure it if necessary, as shown in the manual.

15

(Brickner aff.)

Another of defendant's experts, Lonnie Bird, also testified that plaintiff could have safely made the cut he was attempting to make by holding the workpiece by hand outside of the TABLE HAZARD AREA and without the use of a clamp.  This could be done because the length of the piece of wood plaintiff was using was long enough to extend beyond the TABLE HAZARD AREA.  (Bird depo. 30-34).  Gumnitsky demonstrated in his deposition, however, that holding the workpiece outside the hazard zone was unsatisfactory given that the workpiece would move.  (video of Gumnitsky depo.; Gumnitsky depo. at 72).

Defendant contends that plaintiffs' two experts also admit that the cut Gumnitsky was performing when he was injured could have been safely performed with the Delta saw as designed.  Indeed, Daukss agreed that there were three alternative ways to make the cut safely from the right side of the saw.  (Daukss 28, 42).  However, the portions of Madden's testimony upon which defendant rely do not clearly show that he agreed alternative cuts could be performed safely.  (Madden depo. 34-35, 48).

Defendant further asserts that Gumnitsky does not dispute that he could have utilized the Delta saw's left fence, which is completely flat on the back side[7], along with a commercially available clamp.  Gumnitsky testified, however, that he never made this cut from the left side. (Gumnitsky depo. 63).

Based on the foregoing, there exists an issue of fact as to whether the Delta saw had a design defect.

Defendant argues that even assuming a defect has been shown, plaintiffs cannot show

---

[7]        (Doc. 15 Ex. C).

16

that the defect was the proximate cause of Gumnitsky's injury.  For the following reasons, the Court agrees.

As discussed above, proximate cause is an essential element of plaintiffs' burden. Defendant asserts that the design is inconsequential because Gumnitsky testified that he does not use a clamp for making the cut he was attempting to make.  Plaintiffs assert that Gumnitsky would have attempted to use a clamp to make the cut he was performing had it been supplied by defendant, but the injury still would have occurred because of the design defect. This Court disagrees.

Plaintiffs point to the following portion of Gumnitsky's testimony:

Q.  And never with a clamp [this type of cut]; always using your hands to hold [the piece of wood]?

A.  If I - - if I can use a clamp, I will use it.

Q.  Okay.  Have you used clamps before with a miter saw?

A.  I, I use it for, for bigger piece and I can put it like flat.

Q.  Okay.

A.  Even if you use it like that, you can - - you have to use your hand because it's moving.  If you need precision cut-

Q.  All right.

A.  That's clamp- -

***

Q.  All right.  Do you ever use the plastic clamps that you get at DIY when you use your saw?

A.  Why I have to use it?

Q.  Well, let me ask you.  Yeah, why?  I guess that's really the question.

17

[Discussion with interpreter]

A. [By interpreter] Okay.  This is what he says, basically.  He hasn't seen anybody use it and he couldn't use it and, plus, I guess the back of it, it's on an angle and you just can't put a C clamp back there. [8]

(Gumnitsky depo. 56-58).  However, Gumnitsky further testified:

Q.  Okay.  But here in the United States you'd made that cut before, correct?

A.  Correct.

Q.  And you'd never used a clamp?

A.  Never.

Q.  Okay.  Had you ever seen a - -

A.  A clamp like this one?

Q.  Any clamp.  Had you ever used a clamp to make that cut before?

A.  No.

Q.  Okay.  Had you ever seen any other carpenter use a clamp to make that cut before?

A.  No.

(*Id.* 60-61).

Examining this portion of Gumnitsky's testimony in its totality, it is demonstrated that Gumnitsky has never and would never use a clamp for this particular size of wood.  Plaintiff did not testify that he would have used a clamp but for the alleged design defect.  Accordingly, this Court agrees with defendant's assertion that Gumnitsky, who examined this and other saws

---

[8]      The Court is disturbed that this answer is not in Gumnitsky's words, but rather in the words of the interpreter.  However, in that the Court is not asked to strike this answer, it will remain.  Nonetheless, as discussed below, this testimony, in conjunction with Gumnitsky's further testimony, shows that he would not have used a clamp in making this cut with this size piece of wood.

before his purchase, knew how the Delta saw's fence was designed and which type of clamp

came with it, and chose this saw based on price because the fence and clamp features did not

matter given that he never cut molding using a clamp. Thus, the alleged defect was not the

proximate cause of Gumnitsky's injury.

Furthermore, it has been recently recognized,

Multiple Ohio courts have held that where a plaintiff fails to read and/or follow clear instructions and where the accident would not have happened had the plaintiff followed the instructions, the plaintiff's strict products liability and negligence claims will fail for lack of the requisite proximate cause.

*Wade v. Diamant Boart, Inc.,* 374 F.Supp.2d 586, 590 (N.D. Ohio 2005, Katz, J.) (citing *Freas v.*

*Prater Constr. Corp*., 60 Ohio St.3d 6 (1991), *Sheets v. Schmidt & Assocs., Inc*., No. C-020726,

2003 WL 21414790, at *3, 4, 5, 2003 Ohio App. LEXIS 2877, at *7-8, 13, 19 (June 20, 2003),

*Mohney v. U.S. Hockey, Inc*., 300 F.Supp.2d 556, 578 (N.D.Ohio 2004) (citing to *Hisrich v.*

*Volvo Cars of N. Am.*, 226 F.3d 445, 451-53 (6th Cir.2000)).

In *Wade,* the failure of the plaintiff, a concrete cutter, to read and/or follow instructions

on a concrete saw and in its manual was found to be the proximate cause of his injuries, not any

design defect. Warnings were included on the actual product and operators were instructed to

read the manual before using the machine.

In *Freas,* the court rejected a design defect claim for lack of proximate cause where the

plaintiff was killed while dismantling a crane after the boom fell on him as he stood underneath

it.  While no safety warnings appeared on the crane itself, the instruction manual warned against

the conduct which lead to plaintiff's accident.  The Ohio Supreme Court, citing to the

Restatement (Second) of Torts, stated, "Where warning is given, the seller may reasonably

assume that it will be read and heeded; and a product bearing such a warning, which is safe for

19

use if it is followed, is not in defective condition, nor is it unreasonably dangerous." *Id.* at 591.

The Delta saw has two sets of identical warnings posted on the right and left front of its

table, facing the operator, which state in relevant part:

> FOR YOUR OWN SAFETY READ INSTRUCTION MANUAL BEFORE
> OPERATING SAW.
>
> 2.  Keep hands out of path of saw blade.
>
> 5.  Never reach around saw blade.

(Brickner aff. and Exs. B-1 and B-2)**.**  Gumnitsky read and understood the warnings on the saw.

(Gumnitsky depo. 46).

The Instruction Manual contains Safety Rules which state in part:

> 12.  **WEAR PROPER APPAREL.**  No loose clothing, gloves, neckties, rings, bracelets,
> or other jewelry to get caught in moving parts...

Additional Safety Rules for Compound Miter Saws contain the following warning:

> 5.  **WARNING: ALWAYS** keep hands out of path of saw blade.  If the workpiece you
> are cutting would cause your hands to be inside the table hazard area (see section
> "**TABLE HAZARD AREA**"), the workpiece should be clamped in place before making
> cut.

(Doc. 15 Ex. C).  The Manual's definition of the TABLE HAZARD AREA contains further

warning:

> **TABLE HAZARD AREA**
> **WARNING: THE AREA INSIDE THE TWO RED LINES (A) FIG. 23, ON THE**
> **TABLE IS DESIGNATED AS A HAZARD ZONE.  NEVER PLACE YOUR**
> **HANDS INSIDE THIS AREA WHILE THE TOOL IS BEING OPERATED.**

(*Id.*).  Gumnitsky testified that he read the Manual but did not understand everything.

(Gumnitsky depo. 45-46).

Plaintiffs ignore the fact that Gumnitsky had his hand within the TABLE HAZARD

20

AREA.

Gumnitsky did not follow the clear instruction to keep his hand out of the TABLE HAZARD AREA while performing the cut.  The Delta saw's manual provided instructions (including pictures) demonstrating how Gumnitsky could have been performed the cut he was attempting to make while laying the workpiece flat on the table and utilizing the clamp.  The manual also instructed that Gumnitsky could have used his hand provided it was outside the TABLE HAZARD AREA.  The manual and the warning on the saw itself instructed that hands were to be kept away from the path of the blade.  The design of the saw and the danger of the blade were obvious to Gumnitsky who chose to employ a method that put his hand in very close proximity to the blade.  Thus, plaintiffs have not demonstrated that the saw's design was the proximate cause of the injury .

Assuming plaintiffs have produced evidence of a defect and proximate cause, defendant asserts that assumption of the risk is a complete defense in this case.  The Court need not reach this issue. *See Miller v. Uniroyal Technology Corp*., 35 Fed.Appx. 216, 224 (6th Cir. 2002) (Because plaintiff did not offer sufficient evidence to support either her design defect or failure-to-warn claims, the court need not consider defendant's assertion of the assumption of the risk defense.)  If the Court were to reach this issue, it agrees that Gumnitsky assumed the risk.

In *Briney v. Sears, Roebuck & Company,* 782 F.2d 585 (6th Cir. 1986), plaintiff's hand was injured by the blade of an electric table saw after he removed the blade guard assembly in order to perform a specific cut.  The court stated, "To establish a defense for assumption of the risk, it is necessary to show (1) consent to or acquiescence in (2) an appreciated or known (3) risk....  Further, the obviousness of the danger is a factor to be considered in determining whether

21

a plaintiff voluntarily and unreasonably encountered a known danger." *Id.* at 590 (citations omitted). The *Briney* court determined that plaintiff assumed the risk. In particular, the manual accompanying the saw required the blade guard to be in place on all cuts such as the one plaintiff was performing, plaintiff had read and understood the manual's instructions and the dangers were obvious. Plaintiff's theory of liability had rested on the presumption that the design of the blade guard caused him to remove the guard. Nonetheless, the court concluded that "this court cannot ignore the obviousness of the danger and the voluntariness of plaintiff's actions, even if plaintiff's actions were reasonably foreseeable by the manufacturer." *Id.* at 591.

In the case herein, there also exists an obviousness of the danger of Gumnitsky placing his hand within the TABLE HAZARD AREA, thereby placing it in such close proximity to the saw's blade. Delta warned of such danger. Although Gumnitsky testified that he did not understand everything he read in the manual, he did not testify that he did not understand this particular warning. Further, he did understand the warning, "Keep hands out of path of saw blade" as this warning appeared on the saw itself and Gumnitsky testified that he understood these warnings.

Plaintiff contends that assumption of the risk is inapplicable, relying on *Patterson v. Central Mills, Inc.,* 112 F.Supp.2d 681 (N.D.Ohio 2000) and *Sapp v. Stoney Ridge Truck Tire,* 86 Ohio App.3d 85 (1993). However, those cases are distinguishable.

In *Patterson*, plaintiff was an eleven year-old boy who suffered burn injuries when his t-shirt caught fire after he leaned over a burning stove. The court rejected the assumption of the risk defense, finding that the danger of injury was not so obvious and unavoidable that plaintiff tacitly consented to the risk. In the case herein, however, placing one's hand in close proximity

22

to the saw's blade (and within the TABLE HAZARD AREA), despite defendant's warning, is an obvious danger voluntarily undertaken by Gumnitsky, an experienced carpenter.

In *Sapp*, a truck driver was injured in an accident allegedly caused by a defective retreaded tire.  The court determined that an assumption of the risk charge to the jury was improper because there was no evidence that plaintiff, although aware that the tire was retreaded, was aware of the danger and proceeded voluntarily and unreasonably to make use of the tire.  In the case herein, by contrast, the danger was not hidden.  Again, Gumnitsky was aware of the danger of permitting his hand to make contact with the blade.  Gumnitsky could have used the clamp provided by defendant to make the cut by holding the wood to the saw's table as demonstrated in the manual.  Gumnitsky has not denied that he could have made the cut safely in this manner.

Plaintiffs further assert that Gumnitsky did not assume the risk because defendants' experts have testified that clamps are not safety devices.  Therefore, plaintiffs contend that "there is an inherent contradiction that this incident could have been prevented had [Gumnitsky] used a clamp..."  (Doc. 20 at 16).  However, defendant has also asserted that the accident could have been prevented had Gumnitsky kept his hand outside the TABLE HAZARD AREA- without the use of a clamp.

Accordingly, Gumnitsky's failure to follow the instructions/warnings regarding placing his hand in the path of the blade amounts to an assumption of the risk.

### (b) failure to warn

Under Ohio law, a manufacturer is liable where its unreasonable failure to warn of a risk associated with its product causes injury. Ohio Rev.Code § 2307.76(A). A plaintiff establishes a

failure-to-warn claim by first showing that the manufacturer had a duty to issue a warning with

regard to its product, but failed to do so. *Freas v. Prater Constr. Corp., Inc*., 60 Ohio St.3d 6,

(1991). The plaintiff must also show that the absence of a warning proximately caused his injury.

*Id.*

      Plaintiffs allege in their Complaint that defendant failed to provide an adequate warning

or instruction.  A defendant can be held liable for an inadequate warning: "An inadequate

warning may make a product as unreasonably dangerous as no warning at all; there is no reason

to preclude a plaintiff from pleading and proving strict liability just because some warning,

however inadequate, accompanies a product." *Hisrich,* 226 F.3d at 452.  The Ohio Supreme

Court has explained:

> The fact finder may find a warning to be unreasonable, hence inadequate, in its factual
> content, its expression of the facts, or the method or form in which it is conveyed. The
> adequacy of such warnings is measured not only by what is stated, but also by the manner
> in which it is stated. A reasonable warning not only conveys a fair indication of the
> nature of the dangers involved, but also warns with the degree of intensity demanded by
> the nature of the risk. A warning may be found to be unreasonable in that it was unduly
> delayed, reluctant in tone or lacking in a sense of urgency. A jury may find that a
> warning is inadequate and unreasonable even where the existence of "risk," i.e., a causal
> relationship between use of the product and resulting injury, has not been definitely
> established.

*Id.* (citing *Seley v. G.D. Searle Co.,* 67 Ohio St.2d 192 (1981).

      While plaintiffs cite to this precedent, they fail to apply it to their case and do not point to

evidence that the warnings and/or instructions played a role in Gumnitsky's injury.

      Plaintiffs merely assert, "At a minimum, Delta's warnings are less than clear."  (Doc. 20

at 14).  Plaintiffs point to the following Additional Safety Rule found in the Instruction Manual,

"**ALWAYS** hold the work firmly against the fence and table.  **DO NOT** perform any operation

freehand."  (Doc. 15 Ex. C at 4).  Plaintiffs assert that "freehand" is then "somewhat defined" in

the manual's section entitled, "TYPICAL OPERATIONS AND HELPFUL HINTS."  Plaintiffs

point to the following notations:

> 4.  **WARNING**: If the workpiece you are cutting would cause your hand to be inside the
> table hazard area (see section "**TABLE HAZARD AREA**"), the workpiece should be
> clamped in place before making the cut, as shown in Fig. 41.

> 6.  Never attempt any freehand cutting (wood that is not held firmly against the fence and
> table.)

(Doc. 15 Ex. C at 22).  Plaintiffs, however, do not assert that Gumnitsky was cutting work

"freehand," i.e., cutting a piece of wood without holding it against the fence or saw table.

Gumnitsky was holding his workpiece against the fence.  Moreover, the "TYPICAL

OPERATIONS AND HELPFUL HINTS" state at number 3:

> 3.  Place the workpiece on the table and hold or clamp it firmly against the fence.  Figure
> 41 illustrates the standard equipment work clamp (A) being used to clamp a workpiece to
> the fence and table.  The clamp (A) can also be used in the rear position or on the left
> front side of the blade.

(*Id.*)  This instruction is immediately followed by the warning that if the workpiece to be cut

causes the operator's hand to be inside the table hazard area, a clamp should be used.  Thus, the

instructions clearly demonstrate how to use the clamp provided with the Delta saw by holding

the wood against the table (horizontally).  Gumnitsky has not denied that he could have safely

performed the cut he was attempting to make in this manner.

Plaintiffs do not address the fact that despite defendant's warnings and instructions,

Gumnitsky placed his hand within the TABLE HAZARD AREA.  Furthermore, plaintiffs point

to no evidence that there was anything about defendant's warnings or instructions that played a

role in Gumnitsky's accident.  As discussed above, the manual provided instructions, as well as

pictures, regarding use of the saw which included the cut Gumnitsky was attempting when he

was injured (i.e., the manual instructed how to safely use the clamp provided with the saw's

table to perform the cut, should a clamp be necessary to secure the work piece inside the TABLE

HAZARD AREA.)

For these reasons, summary judgment is appropriate based on inadequate warning

(**c**) **failure to conform to an express representation**

Plaintiffs present no evidence or argument to support its claim that defendant breached an

express warranty.

For the foregoing reasons, summary judgment is warranted on Count One.

**(2) Count Two**

Count Two alleges that defendant was negligent in the design, manufacture, sale and

distribution of the Delta saw.  While defendant moved for summary judgment on this claim,

plaintiffs provide no response and summary judgment is, therefore, warranted.

**(3) Count Five**

Count Five alleges a loss of consortium on behalf of Anna Gumnitsky.  Defendant does

not address this claim because it is derivative in nature.  Plaintiffs do not address the claim.  The

claim fails because Counts One and Two fail.  *See Tanielian v. DaimlerChrysler Corp*., 108

Fed.Appx. 386, 387 (6th Cir. 2004) (Because the wife's claim is dependent upon the success of

her husband's claim, the court's opinion expressly refers only to the claim of the husband.)

**Conclusion**

For the foregoing reasons, defendant Delta International Machinery Corporation's

Motion for Summary is granted.

26

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge


Dated:   10/24/05